**Becky Ann REDCROSS, Plaintiff,**
v.
**The COUNTY OF RENSSELAER; the City of Troy; the Rensselaer County Sheriff's Department; the City of Troy Police Department; Charles J. Wilcox, individually and in his investigative and administrative capacity as District Attorney of Rensselaer County; John J. Givney, individually and in his capacity as Chief of Police of the City of Troy Police Department; Eugene Eaton, individually and in his capacity as Sheriff of Rensselaer County; Stephen D. Weber, individually and in his capacity as investigator for the Rensselaer County District Attorney's Office; Michael J. Danaher, individually and in his capacity as investigator for the Rensselaer County District Attorney's Office; Howard M. Teal, individually and in his capacity as investigator for the Rensselaer County District Attorney's Office; William P. Miller, individually and in his capacity as a sergeant with the City of Troy Police Department; Daniel D. Purcell, Jr., individually and in his capacity as a police officer with the City of Troy Police Department; Charles Radcliff, individually and in his capacity as a police officer with the City of Troy Police Department; Michael Barrett, individually and in his capacity as a police officer with the City of Troy Police Department; James Kilgallon, individually and in his capacity as a police officer with the City of Troy Police Department; and Various Police Officers and Matrons of the City of Troy Police Department and Rensselaer County Sheriff's Department, Who Are At This Time Unknown, individually and in their official capacity as members of the City of Troy Police Department and Rensselaer County Sheriff's Department, Defendants.**

No. 79–CV–827.

United States District Court,
N. D. New York.
March 24, 1981.

Raymond A. Kelly, Albany, N. Y., for plaintiff.

Rensselaer County Atty., Marvin I. Honig, Troy, N. Y., for defendants County of Rensselaer, Rensselaer County Sheriff's Dept., Dist. Atty., Charles J. Wilcox, Sheriff Eugene Eaton, Investigators Stephen D. Weber, Michael J. Danaher, Howard M. Teal, and various police officers and matrons of the Rensselaer County Sheriff's Department who are at this time unknown; Robert D. Wilcox, Asst. County Atty., Troy, of counsel.

Donald C. Bowes, Corp. Counsel of the City of Troy, Troy, N. Y., for defendants City of Troy, City of Troy Police Dept., John J. Givney, William P. Miller, Daniel D. Purcell, Jr., Charles Radcliff, Michael Barrett, and James Kilgallon.

MEMORANDUM—DECISION
and ORDER

JAMES T. FOLEY, Senior District Judge.

The plaintiff, Rebecca N. Redcross brought this action for money damages in the total amount of twenty-four million dollars, four million compensatory and twenty million punitive, pursuant to Title 42 U.S.C. §§ 1983, 1985(2), 1985(3), 1986, and 1988 by the filing of a detailed complaint alleging illegal and conspiratorial incarceration and imprisonment of the plaintiff by the defendants in violation of the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution. As in most of these civil rights actions, numerous public agencies and officials are named as defendants with the assertion in the title many more are unknown. The case is now before this Court on certain defendants' motion to dismiss the complaint under Rule 12(b) of the Fed.R.Civ.P. for failure to state a claim upon which relief can be granted. The defendants in this motion to dismiss are those represented by the office of the Rensselaer County Attorney: The County of Rensselaer; the Rensselaer County Sheriff's Department; Charles Wilcox, District Attorney for the County of Rensselaer; Eugene Eaton, Sheriff of Rensselaer County; Stephen D. Weber, Michael Danaher, Howard Teal, Investigators for the Rensselaer County District Attorney's Office; and various members of the Rensselaer County Sheriff's Department, who are at this time unknown. The defendants Eaton, Teal, Weber, Danaher, Wilcox, and the Rensselaer County Sheriff's Department have filed appropriate affidavits and move alternatively for summary judgment dismissing the complaint under Fed.R.Civ.P. 56. An answer has been filed to the claims of the plaintiff for the City of Troy, its police department, and police officers denying the allegations of each of the claims in the complaint and setting forth six affirmative defenses, including the one of good faith conduct.

For the reasons stated hereinafter, the motion to dismiss the complaint filed by defendants County of Rensselaer, the Rensselaer County Sheriff's Department, Charles J. Wilcox, Eugene Eaton, Stephen D. Weber, Michael C. Danaher, Howard M. Teal, is granted in regard to the claims

alleged in the complaint pursuant to Title 42 U.S.C. §§ 1985(2), 1985(3), and 1986. The motion to dismiss is denied for the claims alleged under Title 42 U.S.C. §§ 1983, 1988. The alternative request for summary judgment is hereby denied.

## FACTS

The murder in the City of Troy of Donald "Digger" Hansen, a member of the Hell's Angel motorcycle gang, was the beginning of the events forming the basis for the filing of this federal court action. It is uncontested that in the late afternoon of December 17, 1978, plaintiff, a seventeen year old female at the time, was visited in her home in Cohoes, New York, by investigators of the Rensselaer County District Attorney's Office, defendants Weber and Teal in the action. The purpose of their visit was to question plaintiff about her knowledge of the Hansen homicide which had occurred in the early morning of that day. Karen Roy, claiming to have been a witness to the homicide, had named plaintiff Redcross as being an eyewitness also. A signed statement made by Roy, which was later recanted, set forth the particulars of the homicide which included several references to the plaintiff. Plaintiff alleges that she told the defendant investigators that she had no knowledge of the homicide. She further alleges that Weber and Teal demanded that plaintiff accompany them to the Troy Police Station for questioning by defendant Wilcox, the Rensselaer County District Attorney.

At the police station, plaintiff claims in the complaint that she was interrogated by defendants Wilcox, Danaher, Weber, and Miller for an extended period of time. Throughout the interrogation plaintiff claims that she was harassed, intimidated, and threatened until she finally was forced to sign a statement which stated that she was an eyewitness to the homicide. Thereafter, it is alleged these defendants advised plaintiff that she was to be held in protective custody as a material witness. A material witness order pursuant to New York Criminal Procedure Law Art. 620, it is claimed that should have been obtained from a judge, was never obtained by the defendants. The complaint alleges that detaining the plaintiff in Holiday Inns in the Capital District Area without the benefit of a material witness order was void, unlawful and unconstitutional. The defendants contend that the plaintiff requested to be put in protective custody because of her great fear of retaliation from the Hell's Angels.

The plaintiff, together with Karen Roy, was first taken to the Troy Holiday Inn. She alleges that:

> they were unlawfully imprisoned, kidnapped and incarcerated without the benefit of the procedural safeguards provided in Article 620 of the Criminal Procedure Law of the State of New York and as mandated by the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

(Plaintiff's Complaint ¶ 25).

On December 18, 1978, plaintiff testified before the Grand Jury of Rensselaer County. Plaintiff alleges that various named and unnamed defendants threatened her to make certain that she testified as to being an eyewitness to the homicide, rather than as she claims now to having no knowledge of it. After testifying, the plaintiff was returned to a Holiday Inn where it is alleged she continued to be "unconstitutionally incarcerated and unlawfully imprisoned." (Plaintiff's Complaint ¶ 26).

On December 20, 1978, it is alleged that defendant District Attorney Wilcox requested a hearing to obtain a material witness order. County Judge M. Andrew Dwyer, it is stated, consented to the hearing. On this evening, plaintiff and Karen Roy were present at the Rensselaer County District Attorney's office and were interrogated by defendants Wilcox, Weber, Danaher, and Teal. The complaint continues that subsequent to the interrogation, defendant Wilcox refused to go forward with the material witness hearing. The plaintiff was then transported back to the hotel at the direction of District Attorney Wilcox. It is asserted that for a period of three to four

weeks the plaintiff continued to be held as a material witness at the direction of District Attorney Wilcox. Plaintiff alleges that the District Attorney did so in his investigatory and administrative capacity as District Attorney. (Plaintiff's Complaint ¶ 27). Plaintiff claims that she was under the guard of various named and unnamed defendants. She claims that all the defendants acted separately and in concert to violate her constitutional rights by forcing her to commit perjury and by holding her against her will without the benefit of a material witness hearing and order. Plaintiff alleges that these and other acts deprived her of several constitutional rights including: freedom of speech, freedom of association, freedom from illegal seizure of her person and effects, and equal protection of the laws.

## DISCUSSION

 The defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) is designed to test the legal sufficiency of the pleadings. It is well established in the federal system that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *Accord, Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Weisman v. Le Landais*, 532 F.2d 308 (2d Cir. 1976) (per curiam); *Escalera v. New York City Housing*, 425 F.2d 853, 857 (2d Cir. 1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). In deciding a motion to dismiss the factual allegations in the complaint are taken as true. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 *reh. denied*, 421 U.S. 1017, 95 S.Ct. 2425, 44 L.Ed.2d 686 (1975); *Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975).

The threshold requirement of a § 1983 action is that the plaintiff must have been deprived of a right secured by the Constitution and laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). In the complaint, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Based on the pleadings, and the application of settled law at this threshold stage, the plaintiff in this action is entitled to her day in court on her charge of alleged unconstitutional conduct by the defendants under 42 U.S.C. § 1983.

 As for the defendant County of Rensselaer, the recent Supreme Court cases in this still evolving field of law, *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) and *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), are controlling as to the liability of municipalities under § 1983. *Monell* held that local governments were among the "persons" to whom § 1983 applies. The question whether local governments should be afforded some form of official immunity in § 1983 suits was then answered in the *Owen* case. The law is that a municipality has no immunity from liability under § 1983 flowing from its constitutional violations and may not assert the good faith of its officer as a defense to such liability. *Id.*, 445 U.S. at 650, 100 S.Ct. at 1415. The liability of a municipality, however, will only be for the injury inflicted by the

> execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.

*Monell, supra*, 436 U.S. at 694, 98 S.Ct. at 2037. The action of the municipality which is alleged to be the cause of constitutional violations must be the kind that

> implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Monell, supra*, 436 U.S. at 690, 98 S.Ct. at 2035. The court stressed that a municipali-

ty should not be held liable for unconstitutional acts of its employees on a respondeat superior theory. *Id.*, at 691, 98 S.Ct. at 2036.

The recent Second Circuit case of *Turpin v. Mailet,* 619 F.2d 196 (2d Cir. 1980), interpreted the type conduct on the part of municipal employees that is necessary to constitute an official policy within the meaning of *Monell.* The court found that if the municipality impliedly or tacitly authorized, approved or encouraged harassment of the plaintiff, it promulgated an official policy within the meaning of *Monell. Id.,* at 201. However, a single incident of illegality will not ordinarily infer an official policy unless it evidences deliberate indifference or gross negligence on the part of the municipal officials or their indifference to a pattern of misconduct. *Owens v. Haas,* 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Cerbone v. County of Westchester,* 508 F.Supp. 780 (S.D.N.Y.1981).

■ In the present action, the allegations in plaintiff's complaint must be considered at this stage as sufficient to withstand a motion to dismiss by the County of Rensselaer. The allegations are worded in such a manner as to at least raise a prospect that county policy caused the constitutional violations which plaintiff claims to have suffered. The complaint contains allegations that there existed either a formal or informal municipal policy authorizing the improper conduct of the district attorney. It was alleged that the county paid over funds for the "unlawful imprisonment" of the plaintiff. It was further alleged that the county was negligent by failing to properly supervise or discipline its employees. (Plaintiff's Complaint ¶ 30).

By denying the motion to dismiss, the plaintiff will be allowed further discovery. As held in *Owens v. Haas, supra,* 601 F.2d at 1247:

this is an appropriate way to balance the concern against entertaining groundless suits against municipalities, *see Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn. 1978), with the dictates of *Escalera v.* *New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853 [91 S.Ct. 54, 27 L.Ed.2d 91] (1970).

The *Escalera* case held that actions, "especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts." It should be understood, however, that the allegations necessary to sufficiently state a cause of action are much less rigorous than the evidence needed at trial to prove "official policy" sufficient to impose liability. *See Turpin v. Mailet, supra,* 619 F.2d at 202.

■ District Attorney Charles J. Wilcox's motion to dismiss the claim under § 1983 is denied. The plaintiff has sufficiently alleged in her complaint that defendant Wilcox deprived her of many constitutional rights, including freedom of speech and association and equal protection of the law, by holding her against her will without obtaining a necessary material witness order. She further sufficiently alleges that such was done while acting under color of state law in an investigative and administrative capacity as district attorney rather than a quasi-judicial one. Defendant Wilcox contends, however, that a dismissal of this claim is proper at the pleading stage due to the absolute immunity from civil rights suits accorded him as district attorney under the holding of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). An absolute immunity defeats a suit of this kind at the outset. *Id.*, at 419, n.13, 96 S.Ct. at 989, n.13. In my judgment, under the present circumstances, and accepting the allegations as true as compelled by law, District Attorney Wilcox is not entitled to absolute immunity at this pleading stage.

The Supreme Court in *Imbler* held that a prosecuting attorney acting within the scope of his duties in initiation and pursuing a criminal prosecution and in presenting the state's case is absolutely immune from liability under § 1983. The district attorney was accorded absolute immunity for these

actions because it is in the public interest for the district attorney to function effectively in his prosecutorial role. *Id.*, at 427, 96 S.Ct. at 993. The Supreme Court did not address the issue of whether a prosecutor is entitled to absolute immunity for action taken outside his quasi-judicial role and did not clearly define what activities were part of his prosecutorial role and those that were not.

The Court of Appeals, Second Circuit, as well as many other federal circuit courts, have decided that when a prosecutor acts in his administrative and investigative role only a qualified "good faith" immunity is to be accorded. *Taylor v. Kavanagh,* 640 F.2d 450 (2d Cir., 1981); *Lee v. Willins,* 617 F.2d 320, 321–22 (2d Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980). *Accord, Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980), *cert. denied sub nom. Rashkind v. Marrero,* —— U.S. ——, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); *Hampton v. Hanrahan,* 600 F.2d 600, 631–33 (7th Cir. 1979); *Jacobson v. Rose,* 592 F.2d 515, 524 (9th Cir. 1978), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Briggs v. Goodwin,* 569 F.2d 10, 21 (D.C. Cir. 1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Apton v. Wilson,* 506 F.2d 83, 93–94 (D.C. Cir. 1974); *Guerro v. Mulhearn,* 498 F.2d 1249, 1256 (1st Cir. 1974); *Hampton v. City of Chicago,* 484 F.2d 602, 608–09 (7th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Robichaud v. Ronan,* 351 F.2d 533, 536–37 (9th Cir. 1965); *J. D. Pflaumer, Inc. v. United States Department of Justice,* 450 F.Supp. 1125, 1134–35 (E.D.Pa. 1978); *Lofland v. Meyers,* 442 F.Supp. 955, 958 (S.D.N.Y.1977). In the *Taylor* case, the doctrine of absolute immunity was extended to a prosecutor's plea bargaining activities. The court held that plea negotiations were an essential part of the criminal justice system and therefore part of the prosecutor's quasi-judicial role. It was noted that the defendant had a remedy available for the misconduct of the prosecutor which included setting aside the plea agreement or the specific performance of it. *Taylor v. Kavanagh, supra,* at 454.

In *Lee v. Willins, supra,* 617 F.2d 320, the plaintiff in a civil rights action claimed that the prosecutor had forced a witness to perjure herself by arresting and incarcerating her, in order to gain evidence to prosecute the plaintiff. The court found that the alleged harm was not inflicted independently of the prosecution of the plaintiff and was therefore part of the prosecutorial activities requiring the absolute immunity of the prosecutor. *Id.*, at 322. Most interestingly, the court in *Lee* noted "that a prosecutor might not enjoy absolute immunity from suit by a witness who was allegedly threatened and imprisoned to obtain her perjured testimony." *Id.*, at 322. It is my judgment that this is close to the situation at hand and therefore believe that District Attorney Wilcox is entitled only to a qualified good faith immunity for his alleged activities.

The plaintiff in this civil rights action does not bring this suit for violations of her constitutional rights by the prosecutor while she was a defendant in a criminal action. She was merely a prospective witness for the prosecution, rather than a defendant, and would have no further relief from Wilcox's acts if he was accorded absolute immunity. District Attorney Wilcox under the allegations of the complaint is afforded a qualified immunity of good faith for when "a prosecutor steps outside the confines of the judicial setting, the checks and safeguards inherent in the judicial process do not accompany him, and thus there is greater need for private actions to curb prosecutorial abuse and to compensate for abuse that does occur." *Marrero v. City of Hialeah, supra,* 625 F.2d at 509.

The district court case of *Clark v. Lutcher,* 77 F.R.D. 415 (M.D.Pa.1977), is similar to the case at hand. In *Clark,* the plaintiff brought a civil rights action against two state policemen and two state prosecutors for arresting him without probable cause in order to obtain evidence against a third party. The court found that these activities fell outside the normal scope of the prosecutor's function; therefore absolute immunity

did not apply. *Id.*, at 420. The plaintiff's complaint was sufficient it was ruled and since the prosecutors were entitled only to a qualified immunity, a question of fact existed which precluded summary judgment.

The Supreme Court set forth the procedural difference between absolute and qualified immunity in *Imbler*. The Court stated:

> The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by evidence at trial. *See Scheuer v. Rhodes*, 416 U.S. 232, 238–39 [94 S.Ct. 1683, 1687–1688, 40 L.Ed.2d 90] (1974); *Wood v. Strickland*, 420 U.S. 308, 320–322 [95 S.Ct. 992, 999–1001, 43 L.Ed.2d 214] (1975).

*Imbler v. Pachtman, supra*, 424 U.S. at 419, n.13, 96 S.Ct. at 989, n.13.

■ Under the doctrine of qualified good faith immunity, defendants, usually public officials and officers, have the burden to establish by a preponderance of evidence that they believed in good faith their actions were lawful and that such belief was a reasonable one under the existing circumstances. Defendants accorded qualified good faith immunity will have to prove that they did not know and reasonably should not have known that their actions would constitute a violation of plaintiff's constitutional rights and that they acted without a malicious intention to deprive the plaintiff of her constitutional rights. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, *reh. denied*, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) (qualified immunity to school administrators and school board members). *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (qualified immunity to executive branch officials); *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (qualified immunity to prison officials); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (qualified immunity to state executive officials); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966) (qualified immunity to police officers).

In denying the motion to dismiss, it must be emphasized that I "intimate no evaluation as to the merits of the claims or as to whether it will be possible to support them by proof". The plaintiff has the burden of proof in the first instance. *Scheuer v. Rhodes, supra*, 416 U.S. at 250, 94 S.Ct. at 1693 (1974).

■ The motion to dismiss the § 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) filed on behalf of defendants Weber, Teal and Danaher is denied. The complaint contains sufficient allegations to be upheld at this stage that these defendants, investigators for the Rensselaer County District Attorney's Office, acted under color of state law to deprive plaintiff of her constitutional rights. Taking the allegations of the complaint as true, as again I must do, the plaintiff places in issue whether the investigators acted in good faith. As with the good faith of the prosecutor, this is a question of fact that will survive a motion to dismiss.

The motion to dismiss the complaint for failure to state a claim under § 1983 filed by defendants Rensselaer County Sheriff's Department; Eugene Eaton, Rensselaer County Sheriff; and unnamed members of the Sheriff's Department is denied.

■ The law governing whether the plaintiff has stated a claim against the County of Rensselaer, as set forth *supra*, is applicable to test the sufficiency of the complaint against the Sheriff's Department as a separate municipal corporation. That is, to state a sufficient claim against the Sheriff's Department, the complaint must contain allegations that the department had adopted a policy, officially or unofficially, that lead to constitutional violations. As with the county, it can be said that plaintiff has raised sufficiently a prospect that the defendant Sheriff's Department had adopted an informal policy of authorizing the improper conduct of the Sheriff and other members of the department. It is alleged that these men took part in the "imprisonment" of the plaintiff at the direction of the Sheriff's Department, the outcome of

which was the violation of plaintiff's rights. Therefore, since the plaintiff alleges that the department, at least, encouraged the detainment of the plaintiff, the necessary allegation of "official policy" is present.

█ The plaintiff also stated a claim against the Sheriff and other members of the Sheriff's Department. She alleged that these defendants acted under state law, as members of the Sheriff's Department, to deprive plaintiff of her constitutional rights. These acts were not carried out pursuant to a court order or at a judge's direction. If these defendants were acting pursuant to a court order, assumedly they would generally have a complete defense and be absolutely immune from liability under the civil rights acts. *See Laverne v. Corning,* 522 F.2d 1144 (2d Cir. 1975); *Tucker v. Maher,* 497 F.2d 1309, *cert. denied,* 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974); *Hevelone v. Thomas,* 423 F.Supp. 7 (D.C.Neb.1976), *aff'd,* 546 F.2d 797 (8th Cir. 1976); *Vail v. Quinlan,* 406 F.Supp. 951 (S.D.N.Y.1976), *rev'd on other grounds,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

However, when a sheriff's conduct is not so supported, he is entitled only to a qualified good faith immunity. *Slavin v. Curry,* 574 F.2d 1256, *reh. denied,* 583 F.2d 779 (5th Cir. 1978); *Hazo v. Geltz,* 537 F.2d 747 (3rd Cir. 1976). As with the other defendants, Sheriff Eaton will have the burden of proving his good faith.

█ In regard to the unnamed members of the Sheriff's Department, their inclusion in the suit will stand at this point. Generally, federal courts disfavor the joinder of John Doe defendants ("unidentified persons" who are real but with unknown names) only in cases that depend on diversity of citizenship for jurisdiction. *Fifty Associates v. Prudential Insurance Company of America,* 446 F.2d 1187 (9th Cir. 1970); *Sigurdson v. Del Guercio,* 241 F.2d 480 (9th Cir. 1956); *Anaya v. United States Federal Bureau of Investigation and John Doe,* 75–CV–587 (N.D.N.Y.1976); *see 2A Moore's Federal Practice* ¶ 8.10 (2d ed. 1980). *See also Bivens v. Six Unknown Federal Nar-*

*cotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

█ The defendants' motion to dismiss the complaint on the ground that it fails to state a claim under 42 U.S.C. § 1985(2) and (3) is granted. In *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnote omitted), the Court interpreted § 1985(3) as requiring "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *See, Ellis v. Cassidy,* 625 F.2d 227, 229 (9th Cir. 1980); *McCord v. Bailey,* 636 F.2d 606, 613 (C.A.D.C.1980). This same interpretation has been placed on the second clause of § 1985(2) which specifies an intent to deny equal protection of the laws as in § 1985(3). *Dacey v. Dorsey,* 568 F.2d 275 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Person v. New York Post Corp.,* 427 F.Supp. 1297, 1305 (E.D.N.Y.), *aff'd without opinion,* 573 F.2d 1294 (2d Cir. 1977); *Reilly v. Leonard,* 459 F.Supp. 291, 295 (D.Conn.1978).

Plaintiff's complaint contains no allegations of racial animus. However, the complaint does contain conclusory allegations that plaintiff is part of a class of ill-treated or imprisoned witnesses in Rensselaer County. These allegations, with no facts to support them, are insufficient to show any class-based discrimination. Since no racial or class-based discrimination is properly pleaded plaintiff's claim based on 42 U.S.C. § 1985(2) (cl. 2) and (3) must be dismissed.

█ The defendants also move to dismiss the claim made by plaintiff pursuant to § 1985(2) (cl. 1). The first clause of § 1985(2) creates a cause of action

> if two or more persons in any state or territory conspire to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.

This clause differs from § 1985(2) (cl. 2) and (3) in that it does not demand a denial of the "equal protection of the laws". Consequently, recently it has been held that there is no requirement to plead racial or class-based discrimination in order to state a claim under § 1985(2) (cl. 1). *McCord v. Bailey, supra,* 636 F.2d at 617. *Accord, Brawer v. Horowitz,* 535 F.2d 830, 840 (3rd Cir. 1976); *Kelly v. Foreman,* 384 F.Supp. 1352, 1355 (S.D.Tex.1974). *Contra, Jones v. United States,* 401 F.Supp. 168, 172–74 (E.D.Ark.1975), *aff'd,* 536 F.2d 269, 271 (8th Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977). Whether or not racial or class-based discrimination is needed to state a claim under § 1985(2) (cl. 1) need not be addressed at this time since that particular clause applies only to actions in federal courts. By its terms, § 1985(2) (cl. 1) applies to conspiracies to deter persons from testifying in "any court of the United States." The constitutional basis for the enactment of § 1985(2) (cl. 1) was Congress's plenary power over the federal courts, U.S.Const. art. 1, § 8, cl. 9. There is no such authority to act over state courts. *See McCord v. Bailey,* 636 F.2d 606, 615, 617 (C.A.D.C.1980); *Shaw v. Garrison,* 391 F.Supp. 1353, 1370 (D.C.La.1975), *aff'd,* 545 F.2d 980 (5th Cir. 1977), *reh. denied,* 555 F.2d 1391, *rev'd on other grounds,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). The alleged conspiracy in this action was to prevent plaintiff Redcross from testifying fully and freely in a state court proceeding. Since no federal court is involved, a claim under § 1985(2) (cl. 1) cannot stand.

The failure of plaintiff to state a cognizable claim under § 1985(2), (3) requires that the § 1986 claim be dismissed. *Barrett v. United Hospital,* 376 F.Supp. 791, 806 [n.70] (S.D.N.Y.), *aff'd* 506 F.2d 1395 (2d Cir. 1974); *Martin Hodas, East Coast Cinematics,* 431 F.Supp. 637, 645 (S.D.N.Y.1977); *Pyles v. Keane,* 418 F.Supp. 269, 271 [n.1] (S.D.N.Y.1976). Title 42 U.S.C. § 1986 creates a cause of action for " 'neglect to prevent' conspiracies mentioned in § 1985.

Therefore, if no cause of action is made out under § 1985, none exists under § 1986 . . . ." *Barrett v. United Hospital, supra. Accord, Hahn v. Sargent, supra,* 523 F.2d at 469–70; *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir. 1975).

■ Defendants' motion to dismiss 42 U.S.C. § 1988 is denied. Section 1988 does not create an independent federal cause of action. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, *reh. denied,* 412 U.S. 963, 93 S.Ct. 2999, 37 L.Ed.2d 1012 (1973). This section allows the court, in its discretion, to award attorney fees as part of the cost to the prevailing party in a § 1983 action. Since there still may be viable claims under § 1983 in this action, the § 1988 claim will not be dismissed.

■ The motion for summary judgment pursuant to Rule 56 filed on behalf of defendants Eaton, Weber, Teal, Danaher, Wilcox, and the Rensselaer County Sheriff's Office is denied. It is the law that the party moving for summary judgment has the burden of clearly establishing the non-existence of any issue of fact that is material to a judgment in his favor. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–1610, 26 L.Ed.2d 142 (1970); *First National Bank v. Cities Service Co.,* 391 U.S. 253, 303, 305–07, 88 S.Ct. 1575, 1599, 1600–1601, 20 L.Ed.2d 569, *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). On a motion for summary judgment, a court is not to try issues of facts. The court can determine only whether triable issues of fact exist. *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975); *American Manufacturers Mutual Ins. Co. v. American Broadcasting Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

In the present action, the defendants have not met their burden of establishing that no genuine issues of fact exist. As for the defendants Eaton, Teal, Weber, Danaher, and Wilcox, who allege they are protect-

ed by a qualified immunity, a question of fact exists as to their involvement in the unconstitutional acts and whether their actions were in good faith. Good faith "depends upon the circumstances and motivations of his actions, as established by evidence at trial." *Imbler v. Pachtman, supra,* 424 U.S. at 419 n.13, 96 S.Ct. at 989 n.13. Other cases have held that summary judgment is inappropriate when a case involves intent or motive. *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir. 1979); *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978).

As for the defendant Rensselaer County Sheriff's Department, genuine issues exist as to any and all of the involvement of the department. However, I must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought . . . ." *Heyman v. Commerce and Industry Insurance Co., supra,* 524 F.2d at 1321. Therefore, the plaintiff has raised a possibility that there are questions of fact to be decided which precludes summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion pursuant to Fed.R.Civ.P. 12(b) is granted in part and the claims brought under 42 U.S.C. §§ 1985 and 1986 are dismissed. The motion to dismiss is denied in regard to the claims under 42 U.S.C. §§ 1983 and 1988, and the defendants' alternative motion for summary judgment is denied.

It is so Ordered.