FEDERAL INSURANCE COMPANY

v.

Randy AYERS, Joseph Geltz, and Thomas N. Petro.

Civ. A. No. 89–8831.

United States District Court, E.D. Pennsylvania.

June 26, 1990.

J. Charles Sheak, Pennington, N.J., for plaintiff.

Thomas Colas Carroll, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

In Count I of its amended complaint, plaintiff Federal Insurance Company ("Federal Insurance") alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, for the interstate transportation of stolen goods and related money transactions. Count II alleges a violation of Pennsylvania's state-law analogue to the Federal RICO statute, 18 Pa.Cons.Stat. Ann. § 911; Count III alleges a violation of New Jersey's state-law analogue to the Federal RICO statute, N.J.Stat.Ann. §§ 2C:41–1 to –6; Count IV alleges a claim for indemnification; Count V alleges a claim for conversion; and Count VI alleges a claim for interference with prospective economic advantage.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Joseph Geltz and Thomas N. Petro each move to dismiss plaintiff's amended complaint.[1]

---

1. In his motion, defendant Petro incorporates the motion to dismiss of defendant Geltz and sets forth three additional arguments in support of dismissing plaintiff's amended complaint.

Defendants also seek a more specific pleading of the allegations of fraud and the claim for indemnification under Count IV.

## I. STANDARD OF REVIEW

■■■ In resolving a motion to dismiss, the court must accept as true all the well-pleaded allegations of the complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable interpretation of the pleadings, the plaintiff may be entitled to relief. *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985); *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir.1977) (per curiam). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

## II. FACTS

Taking as true the allegations in the complaint, the facts giving rise to this action are as follows. Defendants Randy Ayers and Joseph Geltz were employed by Marcy Fitness Products ("Marcy"), a manufacturer of physical fitness equipment, at Marcy's facility in Pennsylvania. From October 1986 through March 1989, Ayers and Geltz repeatedly took and converted fitness equipment, including exercise machines and benches, accessories, and cash belonging to Marcy. During this same time period, Ayers and Geltz conspired with defendant Petro to sell at least some of the stolen equipment to Petro who was a dealer for Marcy in New Jersey. At least two truckloads of equipment were transported to Petro in New Jersey. Each shipment was valued over $5,000, and Ayers and Geltz received cash from Petro in exchange for the goods.

At all times relevant to this action, Marcy held a crime insurance policy issued by the plaintiff. On or about March 29, 1989, Marcy discovered the thefts by its employees, Ayers and Geltz, and later learned of their transactions with Petro.[2] Marcy recovered some of the stolen merchandise from Petro's warehouse in New Jersey. Pursuant to the crime insurance policy, plaintiff paid Marcy $125,000 in full satisfaction of all claims made under the policy relating to the activities of defendants. In return for this payment, Marcy released plaintiff and assigned over to plaintiff all claims that Marcy had or may have against defendants Ayers and Geltz.

## III. DISCUSSION

### A. Defendants' Motions to Dismiss

#### 1. Standing

Defendant Petro asserts that Federal Insurance, a subrogated surety, sustained no direct injury by the alleged RICO violations and, therefore, has no standing to sue under RICO or the related state statutes. Petro cites no authority in support of this argument.

■■ "Any person[3] injured in his business" by a RICO violation may bring a private action under the RICO statute. 18 U.S.C. § 1964(c). This language is interpreted broadly to include any injury to business resulting from the predicate acts. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

■■■ Federal Insurance claims a loss of $125,000, the amount that it was required to pay to Marcy under the crime insurance policy because of the activities of defendants. Federal Insurance asserts that it has standing to sue because (1) it has sub-

---

The third defendant, Randy Ayers, did *not* file a motion to dismiss. On May 21, 1990, the Clerk entered a default against defendant Ayers for failing to plead or otherwise defend against plaintiff's amended complaint.

**2.** Apparently, all three defendants have admitted to the thefts and sales of the stolen equipment. *See* copies of written confessions signed by each defendant attached to Plaintiff's Memo-

randum of Law in Opposition to Defendant Thomas N. Petro's Motion to Dismiss Plaintiff's Complaint. However, in deciding these motions to dismiss, I considered only the facts alleged in the amended complaint.

**3.** "Person" includes any entity that may legally own property. 18 U.S.C. § 1961(3).

rogation rights pursuant to the crime insurance policy issued to Marcy, and (2) Marcy assigned to it the claims and causes of action arising out of defendants' RICO activities.

It is clear that plaintiff's monetary loss flows from defendants' alleged RICO violations and, therefore, constitutes a injury to plaintiff's business sufficient to satisfy the requirements for standing under the federal RICO statute. *See General Accident Ins. Co. of America v. Fidelity and Deposit Co. of Maryland,* 598 F.Supp. 1223 (E.D. Pa.1984) (a fidelity bond surety properly pleaded a violation of RICO by asserting a racketeering injury to its subrogee).

New Jersey's state-law analogue to the federal RICO statute provides for a private cause of action for "any person damaged in his business or property" by reason of a racketeering violation. N.J.Stat.Ann. § 2C:41–4(c). Consequently, plaintiff's standing to sue under the New Jersey statute is identical to its standing under the federal RICO statute.

Pennsylvania's state-law analogue to the federal RICO statute, however, does *not* provide for a private cause of action. *Odesser v. Continental Bank,* 676 F.Supp. 1305, 1316 (E.D.Pa.1987). Accordingly, plaintiff's claim under the Pennsylvania anti-racketeering statute set forth in Count II of the amended complaint shall be dismissed.

### 2. Enterprise

Plaintiff alleges that defendants "acted as an enterprise" to engage in the sale and transportation of stolen equipment. Complaint ¶¶ 17, 22, and 25. Defendants contend that this is an insufficient pleading of a RICO enterprise because the alleged enterprise is (1) not "ongoing" and (2) not distinct from the pattern of activity.[4]

---

**4.** Defendants make this argument of an insufficient pleading of an enterprise with respect to both plaintiff's federal RICO claim and plaintiff's New Jersey RICO claim. The definition of "enterprise" under N.J.Stat.Ann. § 2C:41–1(c) is essentially the same as the federal definition under 18 U.S.C. § 1961(4). Therefore, this discussion applies to both the federal and New Jersey claims.

An "enterprise" is a necessary element of a RICO claim. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). It is an entity through which the racketeers conduct the pattern of racketeering activity or into which profits from the racketeering are invested. An enterprise may be legitimate or illegitimate, formal or informal. *Id.* at 583, 101 S.Ct. at 2528. Enterprise includes a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges an association-in-fact enterprise by asserting that the three individual defendants acted together to conspire, sell, and transport stolen goods.

In order to place limits on the broad enterprise concept, particularly an illegitimate association-in-fact, three elements are necessary to prove the existence of an enterprise. It must be (1) an "ongoing organization" (2) whose "associates function as a continuing unit" and (3) whose identity is "separate and apart from the pattern of activity in which it engages." *United States v. Riccobene,* 709 F.2d 214, 221 (3d Cir.1983) (citing *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528).[5]

The *Riccobene* elements of an enterprise are necessary to *prove* the existence of a RICO enterprise, but they are *not* necessary to *plead* a cause of action under the RICO statute. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 790 (3d Cir.1984). A plaintiff need only identify the enterprise so as to put the defendants on notice of the claims against them. *Id.* Therefore, in the present case, plaintiff has adequately pleaded the existence of a RICO enterprise as an association-in-fact of the defendants, even though plaintiff did not plead the *Riccobene* elements.

---

**5.** Both *Riccobene* and *Turkette* are criminal cases. However, the elements necessary to establish a criminal RICO charge are the same as the elements necessary to establish a civil RICO claim. *Gilbert v. Prudential–Bache Securities, Inc.,* 769 F.2d 940, 941–42 (3d Cir.1985).

■ Furthermore, even though a plaintiff need not plead the *Riccobene* elements necessary to prove a RICO enterprise, if the allegations in the complaint preclude the existence of one or more of the *Riccobene* elements, then dismissal of the complaint is nonetheless appropriate. Thus, I will address defendants' contention that the enterprise alleged by plaintiff is not "ongoing" because the association of defendants ceased to exist when the racketeering activity ended.

■ An enterprise may be considered "ongoing" if its members met on several occasions over a period of time to plan and commit the predicate acts and other activities. *Town of Kearney v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1266 (3d Cir.1987). Consequently, an enterprise can be ongoing even if it existed during a closed period of time.

■ In the present case, plaintiff alleges that defendants conspired for two and one-half years and that, during that period of time, a minimum of two truckloads of stolen equipment were sold to Petro and transported to New Jersey. Complaint ¶¶ 12, 13, and 17. Hence, plaintiff's pleading does *not* preclude the existence of an ongoing RICO enterprise.

Defendant Petro further contends that plaintiff's pleading of an enterprise is insufficient because the alleged enterprise is comprised solely of the three defendants. Petro argues that, in ·a claim under § 1962(c),[6] the "person" who is allegedly liable for RICO violations and the "enterprise" must be separate and distinct entities.

Although plaintiff has not identified, either in its complaint or in its responses to defendants' motions, the provisions of § 1962 which defendants allegedly violated, I shall assume for the purpose of addressing defendant Petro's "nonidentity" argument that plaintiff is alleging a violation of § 1962(c).

■ A single corporate entity may not be both the "person" and the "enterprise" under a § 1962(c) claim. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1358–59 (3d Cir.1987); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir.1984). This rule also applies when the enterprise is an association composed solely of the defendant corporation and its agents. *Newfield v. Shearson Lehman Bros.*, 699 F.Supp. 1124, 1127 (E.D.Pa. 1988). The nonidentity rule is based upon the "employed by or associated with" language in § 1962(c) and stems from the notion that one cannot associate with oneself. The intent behind the rule is to punish offenders while protecting an "innocent" or "passive" corporation who is victimized by the RICO persons. *Petro–Tech*, 824 F.2d at 1359; *Enright*, 751 F.2d at 633–34.

■ On the other hand, an association of unrelated parties is an entity that is distinct from its members. *See United States v. Aimone*, 715 F.2d 822, 828 (3d Cir.1983). Each member can associate with the organization. In addition, § 1962(c) is not intended solely to protect legitimate businesses who are victimized by racketeers; an enterprise under this section may be an illegitimate association of which defendants are members. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165–66 (3d Cir.1989).

In *Shearin*, the alleged enterprise was an association-in-fact of the three corporate defendants. This enterprise met the definition of enterprise under § 1961(4), and the court stated that "nothing precludes an association of corporations for illicit purposes from constituting an enterprise." *Id.*

■ In the present case, as in *Shearin*, the alleged enterprise is an association among the three defendants. The fact that the defendants in *Shearin* were corporations and that the defendants in the

---

**6.** 18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

present case are individuals is a distinction without a difference. In the present case, the alleged "person" is each individual defendant, and the alleged "enterprise" is an association-in-fact of the three defendants. Although the "person" and the "enterprise" are not entirely separate from one another, they are different entities.

### 3. Particularity of Allegations Against Petro

Defendant Petro argues that plaintiff has not adequately alleged Petro's involvement in the pattern of racketeering activity.

■ The acts or participation of a defendant necessary to plead a violation of § 1962 depend upon the subsection of § 1962 which is allegedly violated. For example, under § 1962(d), a defendant can be liable for conspiring to violate one of the other subsections by merely agreeing to the commission of the predicate acts, even though he does not agree to personally commit those acts. *United States v. Adams,* 759 F.2d 1099, 1116 (3d Cir.1985).

■ Therefore, in order to adequately place defendants on notice of the claim(s) against them, plaintiff must specify the subsection(s) of § 1962 which defendants allegedly violated. As I stated earlier, in the present case, plaintiff has *not* identified, either in its amended complaint or in its responses to defendants' motions, the subsection(s) of § 1962 which defendants allegedly violated. Hence, I shall grant plaintiff leave to amend its complaint to specify the subsection(s) of § 1962 upon which it bases its RICO claim.

■ In addition, "[at the pleading stage] plaintiffs need not attribute each individual act to the individual defendant who committed it." *Petro–Tech,* 824 F.2d at 1362. In the present case, plaintiff has alleged that Petro conspired with the other defendants, acted with the other defendants as an enterprise, and received at least two interstate shipments of stolen goods. Whether or not these allegations are sufficient will depend on plaintiff's amendments specifying the subsections of § 1962 which were allegedly violated.

■ Defendant Petro's argument also seems to question the sufficiency of plaintiff's allegations of a continuous pattern of racketeering activity. In order to prove a pattern of racketeering, a plaintiff must allege at least two predicate acts that are related and continuous. *H.J., Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Marshall–Silver Construction Company, Inc. v. Mendel,* 894 F.2d 593, 595 n. 1 (3d Cir.1990); *Swistock v. Jones,* 884 F.2d 755, 757 (3d Cir.1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J., Inc.,* 109 S.Ct. at 2902.

■ Plaintiff alleges a two and one-half year association of the defendants for the purpose of selling and transporting at least two truckloads of stolen goods. This is sufficient to allege a continuous pattern of racketeering activity.

### 4. Particularity of Fraud Allegations

■ Defendants argue that plaintiff alleges fraud with insufficient particularity in violation of Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiff uses the phrases "fraudulently and deliberately converting" and "conspiracy to defraud plaintiff" in paragraphs 17 and 25 of its complaint. Plaintiff is alleging acts of theft and conversion, *not* acts of fraud. Plaintiff does not establish predicates of its RICO claim by alleging mail or wire fraud under 18 U.S.C. §§ 1341 and 1343. Rather, plaintiff sets forth predicates of its RICO claim by alleging interstate transportation of stolen goods under 18 U.S.C. § 2314, laundering of monetary instruments under 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from specified unlawful activity under 18 U.S.C. § 1957.

Particularity pursuant to Rule 9(b) is necessary when the predicate acts are acts of fraud, but not otherwise. *See Saporito v. Combustion Engineering Inc.,* 843 F.2d 666, 673 (3d Cir.1988). It is apparent from the face of the complaint that the "fraud"

referred to by plaintiff relates to defendants' thefts and conversion of Marcy's property. Therefore, defendants' argument that plaintiff has failed to plead its allegations of fraud with sufficient particularity as required by Rule 9(b) is entirely without merit.

■ Defendants also challenge the specificity of Count IV of the complaint pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. This count incorporates the allegations of the federal and state RICO claims and further contends that plaintiff has a right to indemnification by the defendants for the money paid to Marcy pursuant to the crime insurance policy.

This indemnification claim is *not* a vague "catch-all" that attempts to incorporate all conceivable causes of actions, as asserted by defendants. Rather, this indemnification claim merely establishes plaintiff's standing to sue in this action. Therefore, defendants' request for a more definite statement of Count IV is denied.

### B. *Plaintiff's Cross–Motion for Sanctions*

■ Plaintiff has moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure because defendants (1) cited as "controlling authority" a vacated opinion from the Sixth Circuit Court of Appeals and (2) "ignored clear controlling Third Circuit case law defining the term 'enterprise' for racketeering purposes." *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and in Support of Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11, at 14–15.

Although defendants cited a vacated decision,[7] defendants did not rely on the proposition for which it cited this vacated decision to support any of their arguments for dismissal. Therefore, the vacated decision was *not*, as characterized by plaintiff, cited as controlling authority.

Although defendants failed to cite any Third Circuit case which defines the term "enterprise" for racketeering purposes, defendants did cite an opinion from the Eastern District of Pennsylvania which discusses Third Circuit cases defining the term "enterprise" for racketeering purposes.[8]

Sanctions under Rule 11 should only be imposed when it is reasonable based upon the circumstances of the particular case. *See Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975, 982–83 (E.D.Pa.1973). Based upon the circumstances of this case and the fact that defendants' motions to dismiss were not totally without merit, I conclude that it is *not* reasonable to award plaintiff Rule 11 sanctions.

### IV. CONCLUSION

For the reasons stated above, I shall grant in part and deny in part defendants' motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and deny plaintiff's motion for sanctions pursuant to Federal Rule of Civil Procedure 11.

An appropriate order follows.

### ORDER

Upon consideration of the motion of defendant Joseph Geltz to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the motion of defendant Thomas N. Petro to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's responses, plaintiff's cross-motion for sanctions pursuant to Federal Rule of Civil Procedure 11,

---

7. Defendants cite *United States v. Sutton*, 605 F.2d 260 (6th Cir.1979) which was vacated and reversed in part by *United States v. Sutton*, 642 F.2d 1001 (6th Cir.1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3144, 69 L.Ed.2d 995 (1981). *See* Defendant Joseph Geltz' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), at 4.

8. Defendants cite *General Accident Insurance Co. of America v. Fidelity and Deposit Co. of Maryland*, 598 F.Supp. 1223 (E.D.Pa.1984). *See* Defendant Joseph Geltz' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), at 5.

the parties' supporting memoranda, and for the reasons stated in the attached memorandum,

IT IS ORDERED THAT:

1. The motion of defendant Joseph Geltz to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED IN PART and DENIED IN PART.

2. The motion of defendant Thomas N. Petro to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED IN PART and DENIED IN PART.

3. Count II of plaintiff's amended complaint is DISMISSED.

4. Plaintiff is granted leave to amend its amended complaint. Within twenty (20) days from the date this order is docketed by the Clerk, plaintiff shall file a second amended complaint to specify the subsection(s) of 18 U.S.C. § 1962 upon which its RICO claims are based.

5. Plaintiff's motion for sanctions pursuant to Federal Rule of Civil Procedure 11 is DENIED.